IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
SHERMAN DIVISION

| | | |
|---|---|---|
| J. BRIAN WILLIAMS, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | Civil Action No. 4:22-cv-5-ALM-KPJ |
| | § | |
| PAUL KEITH LICARI, | § | |
| | § | |
| Defendant. | § | |

**REPORT AND RECOMMENDATION**
**OF UNITED STATES MAGISTRATE JUDGE**

Pending before the Court are Plaintiff J. Brian Williams's ("Plaintiff") Motion to Support Court Jurisdiction (the "First Motion") (Dkt. 20) and Motion to Support Court Jurisdiction (the "Second Motion") (Dkt. 21) (collectively, the "Motions") (Dkts. 20–21). For the reasons that follow, the Court recommends that the Motions (Dkts. 20–21) be **DENIED**. The Court further recommends that this case be **TRANSFERRED** to the Northern District of California.

**I.   BACKGROUND**

On January 4, 2022, Plaintiff, proceeding *pro se*, initiated this lawsuit by filing a complaint (the "Complaint") (Dkt. 1) against Defendant Paul Keith Licari ("Defendant"). *See* Dkt. 1 at 1. In the Complaint (Dkt. 1), Plaintiff alleges that, on October 9, 2019, he published a song "with original lyrics" entitled "The Twelve Patches of Christmas Tarkov Style." *Id.* at 6.[1] Plaintiff further alleges that he registered this work with the United States Copyright Office before initiating this litigation. *Id.* According to Plaintiff, on December 19, 2021, Defendant uploaded an "identical . . . or similar" song entitled "The Twelve Days of Tarkmas" on YouTube. *See id.* The following day,

---

[1] Tarkov appears to be a reference to the videogame entitled "Escape from Tarkov."

Plaintiff filed a Digital Millennium Copyright Act ("DMCA") request with YouTube notifying Defendant of the purported infringement. *See id.*

On December 26, 2021, Defendant posted "a public tweet openly discussing the pending DMCA situation and directly naming . . . Plaintiff to his two hundred and thirty thousand followers." *Id.* As a result, Plaintiff alleges that he was flooded with "hundreds of angry people" on his "social media platforms," who issued "false down votes" and "death threats" against Plaintiff and his family. *Id.* That same night, Plaintiff alleges that he contacted Defendant to try to reach an "amicable agreement," but Defendant "refused any agreement prior to the DMCA strike being removed." *Id.* at 7. Based on these factual allegations, Plaintiff asserts that Defendant committed a "knowing and intentional copyright infringement" causing him "substantial and irreparable harm." *Id.* On this basis, Plaintiff seeks "injunctive relief, damages, Defendant's profits, increased damages, and reasonable attorney's fees and costs." *Id.*[2]

On April 18, 2022, the Clerk of Court issued summons to Defendant at the following address:

> P.O. Box 1099
> Golden Grove South Australia 5125
> Australia

*See* Dkt. 6. On May 12, 2022, the Clerk of Court reissued summons to Defendant at the same location. *See* Dkt. 9. On August 1, 2022, Plaintiff filed the Application for Entry of Default (Dkt. 10), which the Clerk of Court did not enter due to Plaintiff proceeding *pro se*. *See* Dkt. 11. On October 20, 2022, the Court issued an Order (Dkt. 14) noting that "Defendant appears to reside in Australia" and, thus, "Plaintiff is required to effect service through means authorized under the Hague Convention." Dkt. 14 at 2. Because it was unclear whether Plaintiff properly effectuated

---

[2] Given that Plaintiff is proceeding *pro se*, he cannot recover attorney fees. *See, e.g.*, *Danial v. Daniels*, 162 F. App'x 288, 291 (5th Cir. 2006) ("Attorney's fees are not available to a non-attorney *pro se* litigant." (citing *McLean v. Int'l Harvester Co.*, 902 F.2d 372, 373 (5th Cir. 1990))).

service under the Hague Convention, the Court ordered Plaintiff to "provide legal authority and evidence supporting the entry of default." *Id.* at 3.

On October 31, 2022, Plaintiff filed the Motion to Support Legal Authority and Entry of Default (the "Motion for Entry of Default") (Dkt. 15), wherein Plaintiff asserted that the Clerk of Court properly issued and mailed summons to Defendant in accordance with South Australia's Uniform Civil Rules. *See* Dkt. 15 at 1. Plaintiff further asserted that summons was successfully served on May 20, 2022. *Id.* In support thereof, Plaintiff included a copy of Defendant's "counter notification" to Plaintiff's DMCA request. Dkt. 15-1 at 1. In the counter notification, Defendant asserted that the Twelve Days of Tarkmas song was his "original content," which he created with another streamer during a Twitch livestream. *Id.*[3] Furthermore, Defendant consented "to the jurisdiction of the Federal District Court for the district in which [his] address is located, or if [his] address is outside of the United States, the judicial district in which YouTube is located, and will accept service of process from the claimant." *Id.* at 2.

On August 1, 2023, the Court recommended that the Motion for Entry of Default (Dkt. 15) be denied without prejudice. Dkt. 16 at 1, 14. Specifically, the Court found that Defendant was properly served in accordance with the Hague Convention because Australia permits service by mail, and Plaintiff satisfied all corresponding requirements imposed by South Australia's Uniform Civil Rules. *See id.* at 4–6; *see also Uniform Civil Rules 2020* (SA) 42.3(1) (Austl.). However, the Court also found that it could not enter a default judgment because Plaintiff failed to show that the Court has personal jurisdiction over Defendant. *See id.* at 8–14. Likewise, the Court found that Defendant did not consent to jurisdiction in the Eastern District of Texas because he "consented to the jurisdiction of the 'district in which YouTube is located,'" and "YouTube does not reside in the Eastern District of Texas." *Id.* at 11. Thus, the Court recommended that the Motion for Entry

---

[3] Twitch is a livestreaming service typically used to broadcast video gameplay to a live, online audience.

of Default (Dkt. 15) be denied without prejudice, and that Plaintiff be given a reasonable opportunity to present evidence supporting the Court's jurisdiction over Defendant. *Id.* at 14; *see also Sys. Pipe & Supply, Inc. v. M/V VIKTOR KURNATOVSKIY*, 242 F.3d 322, 325 (5th Cir. 2001) ("When the district court raises the issue of personal jurisdiction *sua sponte*, the court should allow the plaintiff a reasonable opportunity to present any available evidence supporting the court's jurisdiction."). On September 14, 2023, the District Judge adopted the Court's recommendation, denied the Motion for Entry of Default (Dkt. 15) without prejudice, and ordered Plaintiff to "file a motion with evidence in support of the Court's jurisdiction over Defendant." Dkt. 19 at 2.

On September 18, 2023, Plaintiff filed the First Motion (Dkt. 20), wherein he argues that the Court has specific jurisdiction over Defendant and, in any event, has jurisdiction over Defendant pursuant to Rule 4(k)(2) of the Federal Rules of Civil Procedure. *See* Dkt. 20. On January 25, 2024, Plaintiff filed the Second Motion (Dkt. 21), wherein he argues that, by filing the counter notification, Defendant consented to personal jurisdiction in the Eastern District of Texas. *See* Dkt. 21.

## II.     LEGAL ANALYSIS

### A.    First Motion

In the First Motion (Dkt. 20), Plaintiff argues that the Court has specific jurisdiction over Defendant due to his contacts with Texas or, if not, due to contacts with the United States as a whole pursuant to Rule 4(k)(2). *See* Dkt. 20. The Court considers each argument in turn below.

#### 1.    Specific Jurisdiction

Plaintiff argues that the Court has specific jurisdiction over Defendant because his income, derived from viewership and subscriptions on YouTube, Twitch, and other websites, is largely generated from consumers in the United States. Dkt. 20 at 3; *see also* Dkt. 20-3 ("Over 90% of watch time on content produced by [YouTube] channels in Australia comes from outside of

4

Australia."). Similarly, Plaintiff asserts that Defendant placed his content in the "stream of commerce" and had a "reasonable expectation that Texas, being one of the largest consumer states, would consume . . . Defendant's product." Dkt. 20 at 3. Thus, Plaintiff concludes that the Court has specific jurisdiction over Defendant. The Court disagrees.

"The Due Process Clause of the Fourteenth Amendment guarantees that no federal court may assume jurisdiction *in personam* of a non-resident defendant unless the defendant has meaningful 'contacts, ties, or relations' with the forum state." *Luv N' Care, Ltd. v. Insta-Mix, Inc.*, 438 F.3d 465, 469 (5th Cir. 2006) (quoting *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 319 (1945)).[4] Due process is satisfied with respect to a defendant when "(1) that defendant has purposefully availed himself of the benefits and protections of the forum state by establishing 'minimum contacts' with the forum state; and (2) the exercise of jurisdiction over that defendant does not offend 'traditional notions of fair play and substantial justice.'" *Mink v. AAAA Dev. LLC*, 190 F.3d 333, 336 (5th Cir. 1999) (quoting *Latshaw v. Johnston*, 167 F.3d 208, 211 (5th Cir. 1999)). The first prong may be satisfied by contacts that are "unrelated to the cause of action but are 'continuous and systematic,'" establishing general jurisdiction, or that "arise from, or are directly related to, the cause of action," creating specific jurisdiction. *Id.* (quoting *Wilson v. Belin*, 20 F.3d 644, 647 (5th Cir. 1994)).

"Specific jurisdiction applies when a nonresident defendant 'has purposefully directed [his] activities at the forum state and the litigation results from alleged injuries that arise out of or relate to those activities.'" *Walk Haydel & Assocs. Inc. v. Coastal Power Prod. Co.*, 517 F.3d 235, 243

---

[4] "Absent a federal statute that provides for more expansive personal jurisdiction, the personal jurisdiction of a federal district court is coterminous with that of a court of general jurisdiction of the state in which the district court sits." *Submersible Sys., Inc. v. Perforadora Cent., S.A. de C.V.*, 249 F.3d 413, 418 (5th Cir. 2001) (citing FED. R. CIV. P. 4(k)(1)). However, "[b]ecause the Texas [l]ong [a]rm [s]tatute is coextensive with the confines of due process, questions of personal jurisdiction in Texas are generally analyzed entirely within the framework of the [c]onstitutional constraints of [d]ue [p]rocess." *See Religious Tech. Ctr. v. Liebreich*, 339 F.3d 369, 373 (5th Cir. 2003) (collecting authorities).

(5th Cir. 2008) (quoting *Panda Brandywine Corp. v. Potomac Elec. Power Co.*, 253 F.3d 865, 868 (5th Cir. 2001) (per curiam)). Thus, "the defendant's contacts must be more than 'random, fortuitous, or attenuated, or of the unilateral activity of another party or third person.'" *ITL Int'l, Inc. v. Constenla, S.A.*, 669 F.3d 493, 498 (5th Cir. 2012) (quoting *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 475 (1985)). Even "[a] single purposeful contact may confer jurisdiction." *Luv N' Care, Ltd.*, 438 F.3d at 470 n.3 (citing *McGee v. Int'l Life Ins. Co.*, 355 U.S. 220, 222 (1957)).

Where the defendant's contacts arise "over the internet," the Fifth Circuit has adopted the *Zippo* framework, which categories websites along three distinct points:

> [A]t the low end is a passive website which does nothing more than advertise on the internet and for which personal jurisdiction is inappropriate; at the high end is a website that clearly does business over the internet by repeatedly entering into contracts and for which personal jurisdiction is proper. In the middle are websites that allow a user to exchange information with a host computer and for which jurisdiction is determined by the level of interactivity and commercial nature of the exchange of information. Websites in this middle category lend themselves to a familiar contacts-based analysis.

*ESPOT, Inc. v. MyVue Media, LLC*, 492 F. Supp. 3d 672, 699 (E.D. Tex. 2020) (cleaned up). However, "[t]he analysis applicable to a case involving jurisdiction based on the internet . . . should not be different at its most basic level from any other personal jurisdiction case." *DISH Network, L.L.C. v. Elahmad*, No. 23-20180, 2024 WL 1008585, at *3 (5th Cir. Mar. 8, 2024) (per curiam) (omission in original) (quoting *Pervasive Software Inc. v. Lexware GmbH & Co. Kg*, 688 F.3d 214, 226–27 (5th Cir. 2012)) (internal quotation marks omitted). In other words, although the *Zippo* sliding scale is an "important factor" insofar as it provides "evidence of purposeful conduct," the inquiry must focus "on the nature and quality of online and offline contacts to demonstrate the requisite purposeful conduct that establishes personal jurisdiction." *Id.* (quoting *Pervasive Software Inc.*, 688 F.3d at 227 n.7).

In the present case, Plaintiff alleges that Defendant posted the infringing video on YouTube, among other "service providers," and publicly discussed the resulting "DMCA situation" on Twitter. Dkt. 1 at 6. In addition, Plaintiff asserts—and provides evidence—that Defendant likely benefited monetarily from his conduct insofar as he received ad revenue from additional viewers and subscribers. *See* Dkts. 20 at 3; 20-3; 20-9; 20-11; 20-12. Given the large number of views on the allegedly infringing video, it is likely that at least some viewers resided in Texas. However, Plaintiff offers no evidence[5] that Defendant directed the infringing video to those in Texas or marketed his online content to users in Texas and, thus, has not established specific jurisdiction over Defendant. *See, e.g.*, *Viral DRM, LLC v. Unknown Counter Notificants*, 688 F. Supp. 3d 1271, 1278–79 (N.D. Ga. 2023) ("[C]ourts have routinely declined to exercise specific personal jurisdiction over nonresident defendants that upload copyright-infringing photos or videos to websites that are not specifically directed at the relevant forum." (collecting several cases)).

In asserting the opposite conclusion, Plaintiff relies on the theory that Defendant inserted his "product" (the infringing video) into the "stream of commerce" with a "reasonable expectation that Texas, being one of the largest consumer states, would consume . . . Defendant's product." Dkt. 20 at 3. In similar contexts, this "stream of commerce" theory has been repeatedly rejected because "a defendant simply making an allegedly infringing work available worldwide via the internet, without more, does not constitute 'purposeful availment' of a *particular* forum from which the plaintiff's cause of action regarding the alleged infringement can arise or result." *Paynes*

---

[5] Plaintiff also asserts that "Defendant's content is in fact directed at and designed for consumers within the United States." Dkt. 20 at 1. However, Plaintiff provides no evidence, beyond his conclusory assertion, that Defendant did—in fact—target his content to either the United States as a whole, or Texas in particular. Eschewing this conclusory assertion, Plaintiff argues that, because "YouTube pays out the highest per view for views that come from the United States," and because Defendant is "very successful" on YouTube, he "inherently and wisely would direct and design [his] content towards the largest region for reach and profitability." *Id.* at 2. Such attenuated speculation is wholly insufficient to establish personal jurisdiction over Defendant. *See Prep Sols. Ltd. v. Techono Ltd.*, No. 23-cv-211, 2024 WL 1744065, at *3 (E.D. Tex. Apr. 22, 2024).

7

*v. Woods*, No. 23-cv-1308, 2024 WL 894901, at *2 (E.D. La. Mar. 1, 2024) (emphasis in original) (quoting *Seiferth v. Helicopteros Atuneros, Inc.*, 472 F.3d 266, 271 (5th Cir. 2006)); *see Fernandez v. Jagger*, No. 23-891, 2023 WL 6880431, at *4 (E.D. La. Oct. 18, 2023) (same). Absent evidence that Defendant "purposefully targeted" Texas, rather than passively posting the video on the internet, the Court cannot exercise specific jurisdiction over him. *See Elahmad*, 2024 WL 1008585, at *4.

Finally, Plaintiff points to a number of Defendant's other contacts with Texas and the United States more broadly. For example, Plaintiff indicates that Defendant "has a working relationship with a number of other content creators who reside within . . . Texas and often does collaboration work with th[e]se other creators." Dkt. 20 at 2. Plaintiff even indicates that Defendant was in Texas in October 2022, which "further solidifies" Defendant's contacts with Texas and the United States. *Id.* However, these contacts did not give rise to Plaintiff's infringement claim—the posting of the allegedly infringing video did. *Elahmad*, 2024 WL 1008585, at *4. Such general contacts with the forum cannot establish specific jurisdiction over Defendant. *Id.*

    **2.    Rule 4(k)(2)**

Plaintiff also argues that, even if Defendant lacks sufficient contacts with Texas, he has sufficient contacts with the United States as a whole to furnish personal jurisdiction pursuant to Rule 4(k)(2). *See* Dkt. 20 at 4–5. Specifically, Plaintiff asserts that Defendant "avails [himself] [of] the benefits of marketing directly to the whole of the United States, as the United States is the primary market where . . . Defendant's profits are generated." *Id.* at 5. In other words, because Defendant derives income from consumers watching his videos in the United States, Plaintiff asserts that the Court has personal jurisdiction over Defendant. *See id.* The Court disagrees.

Rule 4(k)(2) of the Federal Rules of Civil Procedure provides that, "[f]or a claim that arises under federal law, serving a summons . . . establishes personal jurisdiction over a defendant if: (A) the defendant is not subject to jurisdiction in any state's courts of general jurisdiction; and (B) exercising jurisdiction is consistent with the United States Constitution and laws." FED. R. CIV. P. 4(k)(2).[6] This provision "is a procedural rule governing the territorial limits of service" and, thus, "does not—and cannot—control the constitutional inquiry whether due process prohibits a court from exercising jurisdiction over the defendant in a given lawsuit." *Douglass v. Nippon Yusen Kabushiki Kaisha*, 46 F.4th 226, 233 (5th Cir. 2022) (en banc). While the due process inquiry is governed by the Fifth Amendment in federal cases, "the standards governing personal jurisdiction are essentially the same under the Fifth and Fourteenth Amendment Due Process Clauses." *Id.* at 241–42. Thus, under Rule 4(k)(2), "[t]he court uses the same legal standards developed in the Fourteenth Amendment context—i.e., the minimum contacts analysis in the assertion of specific jurisdiction—but the United States is the relevant forum." *Fintech Fund, FLP v. Horne*, 327 F. Supp. 3d 1007, 1022 (S.D. Tex. 2018) (citing *World Tanker Carriers Corp. v. M/V Ya Mawlaya*, 99 F.3d 717, 723 (5th Cir. 1996)); *see Adams v. Unione Mediterranea Di Sicurta*, 364 F.3d 646, 651 (5th Cir. 2004).

For the same reasons Plaintiff has not established specific jurisdiction over Defendant with respect to Texas, he fails to do so regarding the United States as a whole. Plaintiff offers no evidence, beyond conclusions and speculation, *see supra* note 5, that Defendant directed (or marketed) the allegedly infringing video to those in the United States. For this reason, as well as those discussed above, Plaintiff has not established personal jurisdiction over Defendant pursuant to Rule 4(k)(2). *See Werner v. Dowlatsingh*, 818 F. App'x 671, 673 (9th Cir. 2020) ("Uploading a

---

[6] In the Fifth Circuit, a plaintiff need not "negate jurisdiction in every state." *See Elahmad*, 2024 WL 1008585, at *2 (quoting *Nagravision SA v. Gotech Int'l Tech. Ltd.*, 882 F.3d 494, 499 (5th Cir. 2018)) (internal quotation marks omitted). Instead, that burden falls on the defendant. *Id.* (quoting *Nagravision SA*, 882 F.3d at 499).

video to YouTube from Canada is no more an act expressly aimed at the United States as a whole than it is at California specifically, and [the defendant's] additional contacts with the United States, such as attending conventions outside of California, are not 'suit related conduct' that could support an exercise of specific personal jurisdiction." (citation omitted)); *cf. Elahmad*, 2024 WL 1008585, at *4 (finding the plaintiff established personal jurisdiction under Rule 4(k)(2) because the foreign defendant "purposefully targeted the United States" by: (1) advertising his website as a place to watch allegedly infringing content "in America"; and (2) contracting with a California-based company "to conceal his IP address and to optimize the website's performance for United States users").

Taken together, Plaintiff has not met his initial burden of making a *prima facie* showing of personal jurisdiction over Defendant. For this reason, the Court recommends that the First Motion (Dkt. 20) be denied.

**B.     Second Motion**

In the Second Motion (Dkt. 21), Plaintiff argues that, by filing the counter notification in response to Plaintiff's DMCA request, Defendant consented to suit in "any judicial district in which the service provider may be found." Dkt. 21 at 2 (citing 17 U.S.C. § 512(g)(3)(D)). According to Plaintiff, YouTube and Google "are easily found" within the Eastern District of Texas because they have "employment opportunities and physical locations all across . . . Texas, in cities such as Addison, Midlothian, Frisco[,] and others." *Id.*[7] Furthermore, Plaintiff argues that, because YouTube and Google are internet-based corporations, Defendant has consented to suit "anywhere someone could potentially upload content." *Id.* The Court disagrees.

---

[7] Plaintiff confuses this issue by bundling YouTube and Google for the purposes of his argument. Defendant did not consent to suit in the judicial district where Google is located and, thus, any reference to Google is irrelevant. *See* Dkt. 15-1 at 2 (consenting to suit in "the judicial district in which YouTube is located"). Additionally, the locations which "are easily found" in the Eastern District of Texas appear to be related to Google—not YouTube. *See* Dkt. 20-13 ("In June of 2019, Google officially broke ground on its $600 million data center in Midlothian, Texas.").

10

> Under the DMCA, a counter notification is only effective if it includes:
>
> (A) A physical or electronic signature of the subscriber.
>
> (B) Identification of the material that has been removed or to which access has been disabled and the location at which the material appeared before it was removed or access to it was disabled.
>
> (C) A statement under penalty of perjury that the subscriber has a good faith belief that the material was removed or disabled as a result of mistake or misidentification of the material to be removed or disabled.
>
> (D) The subscriber's name, address, and telephone number, and a statement that the subscriber consents to the jurisdiction of Federal District Court for the judicial district in which the address is located, or if the subscriber's address is outside of the United States, for any judicial district in which the service provider may be found, and that the subscriber will accept service of process from the person who provided notification . . . or an agent of such person.

17 U.S.C. § 512(g)(3). In the counter notification (largely mirroring the language of the DMCA), Defendant consented "to the jurisdiction of the Federal District Court for the district in which [his] address is located, or if [his] address is outside of the United States, the judicial district in which YouTube is located." Dkt. 15-1 at 2. Because Defendant's address is in Australia, he consented to the jurisdiction in "the judicial district in which YouTube is located." *Id.* Courts interpretating similar counter notifications have found that "YouTube is located in the Northern District of California." *See, e.g.*, *Epic Games, Inc. v. Mendes*, No. 17-cv-6223, 2018 WL 2926086, at *5 (N.D. Cal. June 12, 2018); *Shropshire v. Canning*, No. 10-cv-1941, 2011 WL 90136, at *1 (N.D. Cal. Jan. 11, 2011). Furthermore, Plaintiff provides no authority—and the Court finds none—holding that internet-based service providers are "located" in any judicial district with access to the internet. *See* Dkt. 21. In any event, the Court has already found that "YouTube does not reside in the Eastern District of District of Texas" and, thus, "Defendant has not consented to this Court's jurisdiction." *Williams v. Licari*, 692 F. Supp. 3d 647, 658 (E.D. Tex. 2023). As Defendant has not consented to jurisdiction here, the Court recommends that the Second Motion (Dkt. 21) be denied.

11

**C.      Transfer**

In copyright actions, venue is proper "in the district in which the defendant or his agent resides or may be found." 28 U.S.C. § 1400(a). "It is well established that . . . a defendant 'may be found' in any district in which [he] is subject to personal jurisdiction." *Isbell v. DM Records, Inc.*, No. 02-cv-1408, 2004 WL 1243153, at *13 (N.D. Tex. June 4, 2004) (citations omitted). Under 28 U.S.C. § 1406(a), "[t]he district court of a district in which is filed a case laying venue in the wrong division or district shall dismiss, or if it be in the interest of justice, transfer such case to any district or division in which it could have been brought." While this "statute specifically refers to 'laying venue in the wrong division or district,' . . . a transfer can be made due to the absence of personal jurisdiction in a district where venue is otherwise proper." *Herman v. Cataphora, Inc.*, 730 F.3d 460, 466 (5th Cir. 2013) (citing *Bentz v. Recile*, 778 F.2d 1026, 1028 (5th Cir. 1985)). "A court has broad discretion in determining whether to transfer a case under § 1406(a) and may 'transfer the case upon a motion or *sua sponte*.'" *James v. Ally Bank*, No. 21-cv-925, 2022 WL 19569542, at *1 (E.D. Tex. Apr. 27, 2022) (quoting *Caldwell v. Palmetto State Sav. Bank of S.C.*, 811 F.2d 916, 919 (5th Cir. 1987)). Generally, "courts conclude that it is in the interest of justice to transfer to a proper forum rather than to dismiss the litigation." 14D CHARLES ALAN WRIGHT & ARTHUR R. MILLER, FEDERAL PRACTICE AND PROCEDURE § 3827 (4th ed. 2024).

The present case should be transferred rather than dismissed in its entirety. First, venue is improper in the Eastern District of Texas because the Court lacks personal jurisdiction over Defendant. *See Isbell*, 2004 WL 1243153, at *13. Second, venue is proper in the Northern District of California because that District obtained jurisdiction over Defendant when he consented to jurisdiction in "the judicial district in which YouTube is located." Dkt. 15-1 at 2; *see Epic Games, Inc.*, 2018 WL 2926086, at *5 ("YouTube is located in the Northern District of California."). Finally, transferring this case is in the interest of justice because it would save the time and expense

necessary to refile this lawsuit in the proper venue, which may be particularly onerous for a *pro se* litigant. *See Pollock v. Protect My Car Admin Servs., Inc.*, No. 23-1252, 2023 WL 6324366, at *3 (S.D. Tex. Sept. 28, 2023) ("This court finds that the interests of justice favor transfer rather than dismissal, in order to 'minimize the expenditure of any additional time, energy, and money in resolving this case.'" (quoting *Nye Renewables, LLC v. Oak Creek Energy Sys., Inc.*, No. 23-cv-9, 2023 WL 3903190, at *12 (S.D. Tex. May 25, 2023))); *Varma v. Gutierrez*, 421 F. Supp. 2d 110, 115 (D.D.C. 2006) ("In this case, to dismiss the action and direct the *pro se* plaintiff to refile her complaint in the Eastern District of Virginia would be needlessly duplicative and costly."). Furthermore, given that Plaintiff is proceeding *pro se*, this action has been repeatedly delayed to establish the propriety of service of process pursuant to the Hague Convention, *see* Dkt. 14, as well as to determine whether the Court has jurisdiction over Defendant. *See* Dkts. 16–17; 19–21. As a result, Plaintiff is rapidly approaching the statute of limitations with respect to his copyright claims. *See* 17 U.S.C. § 507(b) (three year statute of limitations). Thus, transferring this matter (rather than dismissing it) is in the interest of justice. *Cf. Montoya v. Fin. Credit, Inc.*, 872 F. Supp. 2d 1251, 1281–82 (D.N.M. 2012) (transferring based in part on "potential statute-of-limitations problems").

### III.     RECOMMENDATION

For the foregoing reasons, the Court recommends that the Motions (Dkts. 20–21) be **DENIED**.

The Court further recommends that this matter be **TRANSFERRED** to the Northern District of California.

Within fourteen (14) days after service of the magistrate judge's report, any party must serve and file specific written objections to the findings and recommendations of the magistrate judge. 28 U.S.C. § 636(b)(1)(C).

A party filing objections is entitled to a *de novo* review by the district court of the findings and conclusions contained in this report only if specific objections are made, and failure to timely file written objections to any proposed findings, conclusions, and recommendations contained in this report shall bar an aggrieved party from appellate review of those factual findings and legal conclusions accepted by the district court, except on grounds of plain error, provided that the party has been served with notice that such consequences will result from a failure to object. 28 U.S.C. § 636(b)(1)(C); *Thomas v. Arn*, 474 U.S. 140 (1985); *see also Douglass v. United Servs. Auto Ass'n*, 79 F.3d 1415, 1417 (5th Cir. 1996) (en banc), *superseded by statute on other grounds*, 28 U.S.C. § 636(b)(1) (extending the time to file objections from ten (10) to fourteen (14) days).

**So ORDERED and SIGNED this 3rd day of July, 2024.**

_____
KIMBERLY C. PRIEST JOHNSON
UNITED STATES MAGISTRATE JUDGE